UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN COOPER, #431833,

        Petitioner,

v.                               CASE NO. 08-CV-10868
                               HONORABLE GEORGE CARAM STEEH

MILLICENT WARREN,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, AND DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I. INTRODUCTION

John Cooper ("Petitioner"), a Michigan prisoner, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his Wayne County Circuit Court criminal convictions for felony murder and four counts of assault with intent to commit murder. He was sentenced to life imprisonment without parole on the murder conviction and concurrent terms of parolable life imprisonment on the assault convictions in 2002.

In his pleadings, Petitioner raises claims alleging the improper admission of other acts evidence, the lack of inquiry into possible jury bias, the denial of the right to testify, the improper admission of crime scene photographs, ineffective assistance of trial counsel, newly-discovered evidence, the verdict was against the great weight of the evidence, cumulative error, and ineffective assistance of appellate counsel. Respondent has filed an answer to the petition contending that it should be denied because the claims are barred by procedural default and/or lack of merit. For the

reasons stated herein, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner's convictions arise from the firebombing of a home which resulted in the death of an eight-year-old boy on June 5, 2001 in Detroit, Michigan. The Michigan Court of Appeals set forth the underlying facts of the case, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), as follows:

> In June of 2001, Gloria O'Bryant lived at 15940 Log Cabin in the city of Detroit, along with her brother, sister, brother-in-law, and the victim, her eight-year-old nephew Marcus Johnson. In early June of 2001, O'Bryant loaned a dress to an acquaintance. When the acquaintance did not return the dress, O'Bryant went to retrieve the dress from the acquaintance's house, armed with a knife. At the house, O'Bryant got into an argument with defendant and defendant's cousin. As she was leaving, someone from inside the house fired two rounds into the air. The following day, someone broke defendant's car window. Defendant was angry and said that he was going to seek revenge on whoever broke his window.
>
> On June 5, 2001, at approximately 4:00 a.m., defendant threw a Molotov cocktail FN1 through a bedroom window at O'Bryant's house. He then threw another Molotov cocktail through the living room window that exploded next to the couch where Marcus was sleeping. Attempts to rescue Marcus from the burning house were unsuccessful and he died.
>
> FN1. A glass bottle full of gasoline and stuffed with a rag that is ignited.
>
> Dwight Pickett, one of defendant's best friends, testified that he went to defendant's house on June 5, 2001, at approximately 1:30 a.m. Pickett stated that defendant was upset because someone had busted out his car window and was threatening to blow up someone's house. Pickett testified that he and defendant left defendant's house at approximately 2:00 a.m. and went to 15940 Log Cabin to scope out the house. Next, they went to defendant's girlfriend's house to retrieve a gas can. Pickett and defendant drove to the gas station to purchase gas, then drove to defendant's cousin's house, and then finally drove to a park where defendant made firebombs out of glass beer bottles and gasoline. Pickett claims that after defendant made the firebombs, Pickett left the park and went home. Both Pickett and defendant were arrested and

2

charged in this case. Pickett went to trial and was found not guilty. Defendant, on the other hand, was convicted....

*People v. Cooper*, No. 246330, 2004 WL 1292588, *1 (Mich. Ct. App. June 10, 2004) (unpublished).

Following his convictions and sentencing, Petitioner, through counsel, filed an appeal as of right with the Michigan Court of Appeals raising claims concerning the admission of other acts evidence and the lack of inquiry into possible jury bias. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *Id*. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Cooper*, 472 Mich. 890, 695 N.W.2d 68 (2005).

Petitioner subsequently filed a motion for relief from judgment with the trial court, raising claims concerning the denial of the right to testify, the improper admission of crime scene photographs, ineffective assistance of trial counsel, newly-discovered evidence, the verdict was against the great weight of the evidence, cumulative error, and ineffective assistance of appellate counsel. The trial court found that Petitioner failed to establish the requisite cause and prejudice to be entitled to relief under state law and denied the motion in an opinion dated August 14, 2006. Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Cooper*. No. 276602 (Mich. Ct. App. July 26, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Cooper*, 480 Mich. 957, 741 N.W.2d 374 (2007). The court also denied reconsideration. *People v. Cooper*, 480 Mich. 1078, 744 N.W.2d 137 (2008).

Petitioner thereafter filed the present habeas petition raising the claims presented to the state courts on direct appeal and collateral review of his convictions. Respondent has filed an answer to the petition contending that it should be denied because the claims are barred by procedural default and/or lack merit.

### III. STANDARD OF REVIEW

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. ANALYSIS

**A. Admission of Other Acts Evidence Claim**

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence, namely testimony of Petitioner's involvement in the drug trade and the firing of gunshots before the firebombing. Respondent contends that this claim is not cognizable and lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

As to the admission of prior acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1] Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Moreover, Petitioner's claim that the state trial court violated Michigan Rule of Evidence 404(b) by admitting the other acts evidence is not cognizable

---

[1]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007). Petitioner has thus failed to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim in this regard, he is not entitled to relief. Petitioner has not shown that the disputed evidence rendered his trial fundamentally unfair. First, as explained by the Michigan Court of Appeals in reviewing these issues under state law, testimony about Petitioner's involvement in the drug trade, while ruled admissible by the trial court, was never actually the subject of testimony at trial. Second, the testimony about the gunshots was relevant to explain the circumstances of the crime and to show Petitioner's motive or intent for the crime. *See Cooper*, 2004 WL 1292588 at *2-3. Such testimony was properly admitted under state law for those purposes and the prosecution did not make an improper character or propensity argument based on the evidence. Petitioner has not shown that the admission of this evidence was erroneous or, more importantly, that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### B. Jury Bias Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in failing to inquire into possible jury bias after a juror sent out a note about Petitioner's glaring at the jury. The Michigan Court of Appeals described the situation as follows:

> On the second day of trial, one of the jurors submitted a note to the trial court regarding defendant's intimidating stares toward the jury. The trial court read the note to both the prosecution and the defense and decided not to address the note in front of the jury. Instead, the trial court left it up to defense counsel, as a matter of trial strategy, on how to instruct defendant regarding his body language during the trial. Defense counsel then expressed concern that the juror who submitted the note may be intimidated by defendant and requested that the court inquire regarding whether the juror could remain fair and impartial. The trial court refused, reasoning that the juror indicated she could be fair and impartial before the trial began and that there was nothing in the note to indicate she could no longer do so. It further

reasoned that if defendant did cause the jury to feel intimidated, he chose to do so himself.

*Cooper*, 2004 WL 1292588 at *3.  Respondent contends that this claim lacks merit.

"The Sixth and Fourteenth Amendments guarantee a criminal defendant an impartial jury in state court."  *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008) (citing *Ristaino v. Ross*, 424 U.S. 589, 595 n. 6 (1976); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).  Jurors, however, are presumed to be impartial, *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (citing *Irvin*, 366 U.S. at 723), and "due process does not require a new trial every time a juror has been placed in a potentially compromising situation .... Due process means a jury capable and willing to decide the case solely on the evidence before it...."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  The petitioner bears the burden of proving that the jury was biased.  *See United States v. Wheaton*, 517 F.3d 350. 362 (6th Cir. 2008).

Under clearly established Supreme Court precedent, a defendant who alleges implied juror bias is entitled to a hearing in which he has "the opportunity to prove actual bias."  *Smith v. Phillips*, 455 U.S. 209, 215 (1982); *see also Remmer v. United States*, 347 U.S. 227, 229-30 (1954).  To be entitled to such a hearing, however, a defendant must do more than simply raise the possibility of bias.  *See United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998).  A defendant must raise a "colorable claim of extraneous influence" to warrant a hearing into possible jury bias.  *See United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999).  An "extraneous influence" has been defined as "one derived from specific knowledge about or a relationship with either the parties or their witnesses."  *Herndon*, 156 F.3d at 636.

The Michigan Court of Appeals denied relief on this claim, explaining:

The United States and Michigan Constitutions guarantee a criminal defendant a fair

trial by an impartial jury. US Const, Am VI; Const 1963, art 1, § 20. It is important for trial courts to safeguard a defendant's right to a fair trial before an impartial jury. ...However, due process does not require a new trial every time a juror has been placed in a potentially compromising situation. It is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it....[W]hen information potentially affecting a juror's ability to act impartially is discovered after the jury is sworn, the defendant is entitled to relief only if he can establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause.... Lack of actual bias or prejudice is a matter for the trial judge's determination.

\*\*\*

This Court has previously held, [w]e will not condone or allow a defendant to perpetrate chaos at his own trial and then obtain a mistrial on the basis of prejudice....While we recognize that defendant's actions in this case may not have amounted to "chaos," it nonetheless perpetrated intimidation for which he should not now be allowed to use as a basis of finding prejudice. Since the juror initially indicated that she could be fair and impartial, and defendant chose to glare at the jury during his trial, we conclude that the trial court did not abuse its discretion in failing to stop the proceedings in order to conduct a midtrial voir dire to determine whether defendant himself caused the jury to be biased. Furthermore, a finding of prejudice or bias is a matter for the trial judge's determination, ...and the trial judge found that there was no indication of bias or prejudice.

*Cooper*, 2004 WL 1292588 at \*3-4 (quotations and citations to state law omitted).

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The state courts properly determined that while Petitioner was entitled to a fair and impartial jury, he was not entitled to further inquiry or a hearing into possible jury bias in this case. Petitioner's conduct in glaring at the juror was not an extraneous influence upon the jury which required a hearing. "When a defendant stares at a juror during the course of his trial...he has introduced no outside contact with, nor special information about, a party or witness." *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005) (ruling that defendant's staring was not an extraneous influence and affirming district court's refusal to question juror who wrote note expressing fear); *accord United States v. Lopez*, 271 F.3d 472 (3d Cir. 2001) (upholding

district judge's decision not to strike or question juror who had written note stating that she did not like the defendant staring at her because such conduct was not an outside influence). "To hold otherwise...is to create incentives for a defendant to make his or her jury uncomfortable." *Owens*, 426 F.3d at 805. A defendant is not entitled to a hearing because he has managed to insult or frighten a juror. *Id.*; *see also United States v. Reesor*, 2001 WL 523931, *6 (6th Cir. 2001) (unpublished) (upholding the denial of a *Remmer* hearing where the defendant's own conduct during trial was the source of the implied bias). Because Petitioner's own conduct was the cause of the alleged bias in this case and was not an extraneous influence, the trial court did not err by electing not to question the juror further or conduct a hearing into the matter.

Moreover, the record reveals that the juror indicated that she was able and willing to decide the case fairly during jury voir dire and the trial court instructed the jury about the proper consideration of the evidence during trial. Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has not established that the trial court handled the matter improperly, nor has he established that the jury was biased against him. Habeas relief is not warranted on this claim.

### C. Procedural Default of Remaining Claims

Petitioner asserts that he is entitled to habeas relief due to the denial of the right to testify, the improper admission of crime scene photographs, ineffective assistance of trial counsel, newly-discovered evidence, the verdict was against the great weight of the evidence, cumulative error, and ineffective assistance of appellate counsel. Respondent contends that these claims are barred by procedural default because Petitioner first raised them in his motion for relief from judgment and

the state courts denied relief pursuant to Michigan Court Rule 6.508(D).  Respondent also contends that the claims lack merit.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989).  The last *explained* state court judgment should be used to make this determination.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id*.

Petitioner first properly presented these habeas claims to the state courts in his motion for relief from judgment.  The state trial court, the Michigan Court of Appeals, and the Michigan Supreme Court each denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  *See* Mich. Ct. R. 6.508(D)(3).  The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule.  *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir.

2000) (Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Guilmette v. Howes*, _ F.3d _, 2010 WL 86339, *3 (6th Cir. Jan. 12, 2010) (relying on *Munson v. Kapture*, 384 F.3d 310 (6th Cir. 2004), and ruling that habeas petitioner's claim was procedurally defaulted because "although the state trial court on collateral review addressed the merits of [the] claim, both the state appellate and supreme courts denied the claim pursuant to Mich. Ct. R. 6.508(D)"); *Alexander v. Smith*, 311 F.3d 875, 883-84 (6th Cir. 2009) (confirming that *Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* 128 S. Ct. 1897 (2008) (ruling that it may be appropriate to look to the state trial court's decision denying a motion for relief from judgment to determine whether the appellate courts relied upon a procedural default in denying relief pursuant to MCR 6.508(D)); *Abela v. Martin*, 380 F.3d 915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals denied relief for lack of merit in the grounds presented). In this case, the state trial and appellate courts relied upon a clear state procedural default in denying Petitioner relief.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts that appellate counsel was ineffective as cause to excuse his failure to raise the other claims on direct appeal. Petitioner has not shown that appellate counsel was ineffective. In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense."

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate

counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims contained in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. The prosecution presented significant evidence of Petitioner's guilt, particularly Dwight Pickett's testimony, at trial. Appellate counsel presented viable evidentiary and jury bias issues on direct appeal. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default. He has likewise failed to show that he is entitled to habeas relief based upon an independent claim that appellate counsel was ineffective.

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court finds that the defaulted claims lack merit for the reasons stated by the trial court in denying Petitioner's motion for relief from judgment and as further discussed herein. *See* discussion *infra*.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of actual innocence requires a petitioner to

support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant relief from this Court.

### D. Merits of Defaulted Claims

#### 1. Right to Testify

Petitioner asserts that he is entitled to habeas relief because he was denied his right to testify in his own defense at trial. It is well-established that a criminal defendant has a constitutional right to testify in his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 52-53 & n. 10 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir.1997). "However, it has been held that a 'barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary...to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.'" *McCoy v. Bock*, No. 01-10052, 2003 WL 22994984, *11 (E.D. Mich. Dec.17, 2003) (quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991), and citing *Chang v. United States*, 250 F.3d 79, 84-85 (2nd Cir. 2001); *Sciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987)). As the Sixth Circuit has explained:

> Indeed, '[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.' To the contrary:

> A defendant who wants to testify can reject defense counsel's advice
> to the contrary by insisting on testifying, communicating with the
> trial court, or discharging counsel. At base, a defendant must alert
> the trial court that he desires to testify or that there is a disagreement
> with defense counsel regarding whether he should take the stand.
> When a defendant does not alert the trial court of a disagreement,
> waiver of the right to testify may be inferred from the defendant's
> conduct. Waiver is presumed from the defendant's failure to testify
> or notify the trial court of the desire to do so.

*Hodge v. Haeberlin*, 579 F.3d 627, 639-40 (6th Cir. 2009) (citations omitted) (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)).

In this case, Petitioner makes only a bald assertion that trial counsel precluded him from testifying at trial. Petitioner does not present any evidence, other than his own assertions, which shows that he was misled or believed he was not allowed to testify. "[D]efense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide." *Webber*, 208 F.3d at 550-51. As noted, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. If the defendant fails to do so, waiver is presumed. *Id*. at 551. In this case, Petitioner did not testify at trial nor notify the court of his desire to do so. Waiver of the right to testify is therefore presumed, and Petitioner has not rebutted this presumption. Habeas relief is not warranted on this claim.

### 2. Admission of Crime Scene Photographs

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting gruesome crime scene photographs depicting the fire-ravaged house and the dead boy. As previously discussed, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Serra*, 4

F.3d at 1354. Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh*, 329 F.3d at 512; *Clemmons*, 34 F.3d at 356.

The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial. *See Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997), for proposition that such photographs do not raise the "spectre of fundamental fairness such as to violate federal due process of law"); *Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004); *Pearl v. Cason*, 219 F. Supp. 2d 820, 830 (E.D. Mich. 2002); *see also Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (admission of gruesome photographs of victim's body in a murder case does not offend the Constitution when there is some legitimate evidentiary purpose for admission). Because the photographs of the crime scene were relevant, Petitioner cannot show that he was denied a fair trial by their admission. Habeas relief is not warranted on this claim.

### 3. Ineffective Assistance of Trial Counsel

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for refusing to allow him to testify in his own defense, for failing to investigate and call potential witnesses, and for failing to seek a continuance in order to file a notice of alibi. As noted, the United States Supreme Court has set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the

defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686). Petitioner has not shown that defense counsel erred or that he was prejudiced by counsel's conduct so as to satisfy the *Strickland* standard.

Petitioner first asserts that counsel was ineffective for refusing to allow him to testify in his own defense. However, Petitioner's failure to assert his right to testify at trial or to question counsel's advice at trial is fatal to his claim. As explained *supra*, Petitioner's waiver of his right to testify is presumed in this case and he has failed to rebut that presumption. If Petitioner had truly desired to testify at trial, he could have rejected counsel's advice to the contrary by insisting on testifying, communicated his desire to testify with the trial court, or discharged counsel. *See Hodge*, 579 F.3d at 639-40; *Webber*, 208 F.3d 551. Petitioner did none of those things.

Petitioner has also not established that counsel's advice not to testify was deficient. Given the trial testimony, Petitioner's demeanor and potential credibility issues, and the circumstances of the crime, counsel may have reasonably determined that it was in Petitioner's best interest not to testify at trial. Moreover, even assuming that counsel refused to call Petitioner despite his desire to testify, Petitioner has not demonstrated that he was prejudiced by counsel's conduct. *See Hodge*, 579 F.3d at 640 (applying *Strickland* prejudice prong to claim that counsel failed to allow petitioner to testify); *accord United States v. Tavares*, 100 F.3d 995, 998 (D.C. Cir.1996) (declining to establish rule of per se prejudice in claims involving counsel's interference with right to testify). Petitioner has not indicated with any specificity what his testimony would have been, nor has he shown that any such testimony would have benefitted his defense or affected the outcome at trial. Consequently, he has failed to establish that he was prejudiced by counsel's advice that he not testify at trial. *See Pagani-Gallego v. United States*, 76 F. App'x 20, 24 (6th Cir. 2003). Habeas relief is not warranted on this claim.

Petitioner also asserts that counsel was ineffective for failing to investigate and call potential witnesses – Terri Hosea, Veronica Taylor, and John Burt. It is well-established that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007) ; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). "American Bar Association standards...also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987); *see also Rompilla v. Beard*, 543 U.S. 374, 387 (2005) (noting that the ABA

standards provide guidance for determining the reasonableness of counsel's conduct). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258.

That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

In this case, Petitioner has not established that trial counsel was deficient or that he was prejudiced by counsel's conduct. The record reveals that Petitioner told counsel that he had an alibi witness (Terri Hosea) on the first day of trial. Petitioner claims that Hosea would have testified that she was with Petitioner at her home at the time of the firebombing. Petitioner also claims that Hosea attempted to contact the police and defense counsel a week before trial and that she did not come forward sooner because she was angry with Petitioner for seeing another woman. Assuming that such is the case, counsel could not be at fault for failing to investigate this witness because Petitioner did not notify counsel about her until the first day of trial. Moreover, once informed that Petitioner wanted her as an alibi witness, counsel informed the trial court of this fact. Noting that no alibi notice had been filed and that the case had been pending for a long time, the trial court indicated that it would not allow her to testify. Given such circumstances, counsel performed reasonably. Moreover, once informed of Hosea, counsel may have reasonably decided that she was

not a credible witness given her personal relationship with Petitioner and the fact that she waited so long to offer an alibi for him. Petitioner has failed to establish that counsel was ineffective.

The record indicates that Petitioner's other two proposed witnesses, Veronica Taylor and John Burt, would not have provided an alibi or other defense to the charges. According to Petitioner, he told counsel about Veronica Taylor on the first day of trial when he recognized her in court at Dwight Pickett's girlfriend. Petitioner claims that Taylor would have testified that she drove Pickett to Petitioner's home, contrary to Pickett's testimony that he drove himself there. Petitioner asserts that John Burt would have contradicted Pickett's testimony that Petitioner and Pickett were at Burt's house on the day of the firebombing because he no longer lived there. Thus, both witnesses, at best, would have challenged portions of Dwight Pickett's testimony. Neither witnessed the firebombing or would have provided exculpatory testimony. There is no evidence that counsel was unaware of these witnesses and/or failed to investigate them. Counsel may have also reasonably decided that they would not provide particularly beneficial testimony. Petitioner has failed to establish that counsel was ineffective.

Furthermore, and perhaps most importantly, Petitioner has failed to present affidavits from any of the three allegedly favorable witnesses, nor has he submitted other evidence, aside from his own allegations, regarding the substance of their testimony. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary

hearing in habeas proceedings). Petitioner has thus failed to show that counsel erred and/or that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this claim.

Lastly, Petitioner asserts that counsel was ineffective for failing to seek a continuance in order to file a notice of alibi (to allow the testimony of Terri Hosea). The record, however, indicates that the trial court would likely have denied any such request. The trial court expressed dissatisfaction with Petitioner's action in notifying defense counsel and the court about his desire to present an alibi witness on the first day of trial. Given the trial court's reaction, counsel may have reasonably decided that requesting a continuance would be futile and could antagonize the court. Defense counsel cannot be deemed ineffective for failing to make a futile motion. *See McQueen*, 99 F.3d at 1316. Moreover, as discussed *supra*, counsel may have reasonably determined that Hosea's testimony, even if attainable, would not have been credible. Petitioner has failed to establish that counsel erred and/or that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this claim.

### 4. Newly-Discovered Evidence

Petitioner also asserts that he is entitled to habeas relief due to newly-discovered evidence of his innocence - the three aforementioned witnesses. Petitioner fails to state a claim upon which habeas relief may be granted. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a

freestanding claim of actual innocence. *See House*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [petitioner] is not entitled to relief under available Supreme Court precedent"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007); *see also Sitto v. Lafler*, No. 06-2203, 2008 WL 2224862, *1 (6th Cir. May 28, 2008); *Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005). Thus, Petitioner's claim that he is actually innocent and has newly-discovered evidence to prove it does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001).

Additionally, the Court notes that, even if such a claim were viable upon habeas review, Petitioner has not shown that he is entitled to relief on such a basis given that he has failed to present affidavits from any of the alleged witnesses, the alibi witness's testimony would not be particularly credible or reliable, and the other two witnesses' testimony would not establish his innocence. Habeas relief is not warranted on this claim.

### 5. Great Weight of the Evidence

Petitioner next asserts that he is entitled to habeas relief because the verdict was against the great weight of the evidence. This claim is not cognizable on habeas review. It is well-established

that habeas review is not available to correct errors of state law. *See Estelle*, 502 U.S. at 67-68. The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979). Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. a federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *See Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). Petitioner is not entitled to habeas relief on any claim that the verdict was against the great weight of the evidence.

The question on habeas review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this case, the prosecution presented sufficient evidence to support Petitioner's convictions for felony murder (with the underlying felony of arson) and four counts of assault with intent to commit murder. In particular, the testimony of Dwight Pickett established that Petitioner was the perpetrator of the crime. Habeas relief is not warranted on this claim.

### 6. Cumulative Error

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors committed at trial. Petitioner cannot establish that he is entitled to habeas relief based upon cumulative error because he has failed to demonstrate an underlying constitutional violation. *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006). Moreover, the

Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Habeas relief is therefore not warranted on this claim.

## V. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's dispositive decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

When a district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See*

*Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that jurists of reason would not find the Court's procedural default ruling debatable. The Court therefore **DENIES** a certificate of appealability. The Court also concludes that any appeal would be frivolous. *See* Fed. R. App. P. 24(a). The Court therefore **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

Dated: February 18, 2010

S/George Caram Steeh

GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 23, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk
